George L. SHELTON, Jr., et al., Appellants,

v.

Theodore ECTOR et ux., Appellees.

No. 16098.

Court of Civil Appeals of Texas.

Dallas.

Jan. 25, 1963.

426

C. B. Bunkley, Jr., Dallas, for appellants.

Lefkowitz, Green, Ginsberg, Eades & Gilmore, Jack D. Eades, Dallas, for appellees.

WILLIAMS, Justice.

Theodore Ector, and wife Doris Ector, brought this action in the nature of a trespass to try title suit against George L. Shelton, Jr., and Brady J. Jones. Plaintiffs asserted that they were the owners in fee simple of a lot located in Dallas, Texas, and that, on January 11, 1957, they had executed and delivered a warranty deed to defendants conveying all of their title and interest in said land in controversy, subject to a lien to secure the payment of a debt in the principal sum of $2,750.00, which sum defendants had advanced and paid, and also the assumption of the unpaid balance of a first lien note. Plaintiffs then contended that said deed was executed with the understanding and intention of the parties thereto that the same should be a mortgage to secure the money loaned and advanced by defendants and was not intended to operate as a warranty deed. Plaintiffs further asserted that it was never intended between the parties that said deed, absolute upon its ·face, should pass title to the property and that plaintiffs executed said deed acting in complete reliance upon defendants verbal promise and assurance that the same was to serve only and solely as security for the debt created by the advances made to pay off pending debts of plaintiffs. Plaintiffs requested the court to set aside the deed and to construe the same as a mortgage.

Defendants answered with a plea of "not guilty" and a specific denial of the allegations of intent concerning the deed. Defendants alleged that plaintiffs had, following the execution of said deed, executed two lease agreements on the property in question and had breached the terms of said agreements. By cross action, defendants asserted their title to the property in question as evidence by the warranty deed and sought judgment for the title and possession of same.

At the conclusion of the evidence the case was submitted to the jury on two special issues and in response thereto the jury found (1) that the warranty deed in question was intended by the parties to be a mortgage; and (2) that such mortgage was to secure a debt in the sum of $1,944.31. Defendants filed motion for judgment non obstante veredicto contending that there is no evidence, or that the evidence was insufficient, to support the jury's answer to the two special issues and furthermore that the deed could not be construed as a mortgage, as a matter of law. Such motion was duly overruled and judgment rendered upon the jury verdict for plaintiffs.

In view of the nature of appellants' points on appeal we deem it essential to briefly summarize the material testimony. The property involved had been owned by the family of Doris Ector, one of appellees, since 1881, and was partitioned to appellees in February 1954. Thereafter, in 1955, appellees borrowed $10,500.00, using the land as security and built a restaurant building on the property. Appellee Ector became involved in financial difficulties and sought the services of one J. H. Glenn, a real estate man, to aid him in finding someone from whom he could borrow money, using the property as collateral. Ector testified that Glenn referred him to appellants, Shelton and Jones, and that he contacted these two gentlemen seeking to borrow enough money to pay off approximately

$2,500.00 in indebtedness which was apparently rather pressing. Ector, who is shown to have a fourth grade education, testified that during negotiations with appellants a sale of the property was not discussed but that appellants told him that it would be necessary to go to a title company and draw up papers turning over the property as security for a two-year loan, plus a $1,000.00 brokerage fee; that the only way this could be done was to transfer title to appellants, with a two-year option lease, so that they would know they were not going to get their money "messed up". Appellants, appellees, Glenn, and appellants' attorney met at the title company on January 11, 1957, and appellees signed the warranty deed. Ector did not receive any cash money from anyone at that time, but according to the closing statement of the title company the sum of $1,944.31 was advanced by appellants to the title company to be used in payment of appellees' obligations and closing expenses. The first lien loan balance of $9,407.78 was shown to have been assumed by appellants. No lease agreement was drawn up at that time although it was supposed to have been drawn up "right away" according to Ector. The lease agreement was finally drawn up in the office of appellants' attorneys on January 28, 1957, and executed by Ector and his then partner, Hill, as lessees. This lease contained an option agreement to repurchase the property. Later a second lease, substantially identical to the first one, was executed on September 12, 1957, and also contained a repurchase agreement. Ector testified that he had not repaid the loan to appellants because they "put him out before the two years" agreed upon had expired. Ector's wife, Doris Ector, also testified in substantial support of the testimony given by her husband.

The testimony of appellants, Shelton and Jones, and the witness Glenn, was in direct conflict in almost every detail with the testimony of Ector and his wife. Without detailing this testimony it is sufficient to say that all of these witnesses testified that the transaction was that of a sale and not a mortgage.

Appellants' points one and two, briefed together, assert that the *trial court erred in overruling and denying appellants' motion for a judgment non obstante veredicto* because the finding of the jury that the deed in question was intended to be a mortgage, and such mortgage was intended to secure a debt of $1,944.31, was *"so against the weight and preponderance of the evidence as to be manifestly unjust."* (Emphasis supplied.)

We are immediately confronted with the procedural question of the sufficiency of these points to properly raise the question of the adequacy of the testimony to support the jury's answers to the issues submitted. It is to be observed that appellants' points constitute an attempt to attack the action of the trial court in refusing to sustain their motion for judgment non obstante veredicto. These points do not question the failure or refusal of the trial court to overrule any assignment contained in their motion for new trial. It is also interesting to note in the appellants' motion for new trial no complaint is therein made of the action of the trial court in overruling their motion for judgment non obstante veredicto. Rule 418(b), T.R.C.P., provides that points on appeal must be germane to one or more assignments of error contained in the motion for new trial. Points of error not germane to any of the grounds of error specified in motions for new trial are considered waived. 3 Tex.Jur.2d para. 191, page 465; 4 Tex.Jur.2d, para. 658, pages 166–167; Buss v. Shepherd, Tex.Civ.App., 240 S.W.2d 382; Dyche v. Simmons, Tex.Civ.App., 264 S.W.2d 208. Accordingly, we are of the opinion that appellants' points one and two, not being germane to any assignment of error contained in their motion for new trial, must be considered as waived.

Even if such points were to be considered as not being waived, yet we are

of the opinion that appellants' points one and two are fundamentally defective for the obvious reasons that said points challenge the trial court's action in overruling their motion for judgment non obstante veredicto on the grounds that the jury findings sought to be set aside are "contrary to the great weight and preponderance of the evidence". Any attack upon the action of the trial court in overruling a motion for judgment non obstante veredicto must, of necessity, constitute a "no evidence" point as opposed to an "insufficiency of the evidence" point. Rule 301, T.R.C.P., expressly provides that the trial court may render judgment non obstante veredicto "if a directed verdict would have been proper". A directed verdict is only proper where there is no evidence to support the submission of an issue to the jury. To sustain a judgment notwithstanding the verdict, the reviewing court must determine that there was "no evidence" of probative force on which the jury could have made its findings. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194; Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682; Crom v. Cameron County, Tex.Civ. App., 310 S.W.2d 664; Davidson v. Methodist Hospital of Dallas, Tex.Civ.App., 348 S.W.2d 400. Furthermore, the appellate court, in considering such "no evidence" point must weigh the question by considering only evidence favorable to the verdict and disregarding all other evidence. Todd v. Bruner, Tex.Civ.App., 349 S.W.2d 260; Shield Company v. Cartwright, Tex.Civ. App., 172 S.W.2d 108; Dallas Ry. & Terminal Company v. Bosher, Tex.Civ.App., 278 S.W.2d 357.

█ For an authoritative discussion of the often confusing question presented here, see the article by Chief Justice Robert W. Calvert entitled "No Evidence" and "Insufficient Evidence" 38 Texas Law Review, page 361, wherein he states that a point based upon or related to a motion for judgment notwithstanding the verdict is a "no evidence" point, and the fact that the point may speak of "Insufficient evidence" or "not sufficient evidence" cannot make it

otherwise. Accordingly, even if points one and two of appellants were not waived same must be considered by us as being "no evidence" points and therefore must fall because, as stated above, there was evidence before the trial court to amply justify the submission of the two special issues controlling this case.

We have gone further and reviewed the entire record within the purview of the rule laid down by our Supreme Court in re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and find that we cannot say that the testimony revealed by the entire record is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong. Appellants' points one and two are overruled.

Appellants' point four complains of the trial court's action in overruling their motion for judgment non obstante veredicto because there is no evidence that the parties intended the deed to be a mortgage. While this point does present a "no evidence" point yet the same is waived because, as we have heretofore pointed out, appellants made no complaint of the court's action in their motion for new trial. Even assuming the point to be properly raised, we cannot hold that there is no evidence in this record that the parties did not intend the deed to be a mortgage. The resume of the testimony above recited clearly demonstrates ample evidence in support of the submission of the issues to the jury. Appellants' point four is overruled.

█ By their point three, appellants say that the trial court erred in overruling their motion for judgment non obstante veredicto since the deed in controversy, as a matter of law, cannot be construed as a mortgage. While this point is rather vague and indefinite we are able to determine from the argument in support of said point that it is appellants' contention that since the evidence reveals no debt existing there can be no relationship of debtor and creditor between appellants and appellees and hence there can be no mortgage, as a

matter of law. In support of this proposition appellants reveal that appellee Ector testified at one point during the trial that it was left up to him as to whether or not he would repay the money to appellants or let them keep the property. Appellants rely upon such cases as Young v. Fitts, Tex.Civ. App., 183 S.W.2d 186, and McMurry v. Mercer, Tex.Civ.App., 73 S.W.2d 1087, which hold that it is necessary that the relationship of debtor and creditor exist between the parties in order to constitute a mortgage. We do not disagree with the holding of these cases, but do find from this record that testimony of Ector relied upon by appellants does not conclusively establish the fact that no debtor creditor relationship existed between the parties. It is true that at one time during the cross examination of Ector he did testify that it was left up to him as to whether he would repay the indebtedness to appellants or let them keep the property. At another stage of his testimony, however, he stated positively that there was a debt owing by him and that he considered that he would have to repay the same within two years. We think that his own testimony created an issue of fact which would have to be resolved by a jury. The jury resolved this question in favor of appellee Ector. The issue submitted to the jury was prefaced by an instruction by the court defining a mortgage which presupposed the existence of an indebtedness. We must therefore assume that the jury reconciled the conflict in favor of appellee Ector in the light of the Court's instruction. Appellants' third point is overruled.

By appellants' fifth point complaint is made of the trial court rendering judgment because appellees have not tendered the payment of said alleged mortgage indebtedness. This question was not raised by proper assignment in appellants' motion for new trial and is therefore not properly before this court. Appellants' attorney candidly concedes in oral argument before this Court that this point does not comply with the rules and should be overruled. Therefore appellants' point five is overruled.

Finding this record to be free from error, the judgment of the trial court is, in all things, affirmed.

Affirmed.