Ben F. SEE et ux., Appellants,

v.

Lynn LEE, Appellee.

No. 4734.

Court of Civil Appeals of Texas, Eastland.

Jan. 31, 1975.

Rehearing Denied Feb. 28, 1975.

ginia See, sued defendant, Lynn Lee, alleging that defendant, through his agent and employee, John Hindman, made false representations to plaintiffs which induced them to sell their house to a nonexistent buyer as part of a transaction whereby defendant sold plaintiffs a new house. Plaintiffs alleged they owned, subject to a mortgage, a house located on Bacon Drive in Abilene, and after talking with Hindman they agreed to buy a new house, located on North LaSalle, which defendant had built and was offering for sale. They alleged that under the verbal agreement they were to trade-in and convey the Bacon Drive house to defendant, and receive credit for the value of their equity on the purchase price of the new house. Plaintiffs further alleged they were thereafter told by defendant's agent, Hindman, it would not be necessary to trade-in the house to defendant because it had been sold to James R. Oliver who had paid $100 downpayment and agreed to assume the existing loan. Plaintiffs executed a deed presented to them by defendant's agent conveying the Bacon Drive property to "James R. Oliver and wife, Emma L. Oliver." The note against the Bacon Drive property was not paid and the holder, Stamford Federal Savings & Loan Association, foreclosed its lien in 1966, and on March 30, 1972, took a $2,305.48 deficiency judgment against plaintiffs.

Plaintiffs contend defendant's agent, Hindman, represented to them that their Bacon Drive house was sold to James R. Oliver when in fact no such sale was made and no such person existed.

Plaintiffs alleged the misrepresentation occurred in December of 1964. Their suit was not filed until July 20, 1973. Defendant's motion for summary judgment, based upon the two year statute of limitations, was granted by the trial court. Plaintiffs have appealed. We reverse and remand.

Fraud will prevent the running of the statute of limitations until it is dis-

Jack Yates, Abilene, Johnny M. Moore, Mays, Moore, Dickson & Roberts, Sweetwater, for appellants.

Malcolm C. Sch·.lz, Mike Baskerville, McMahon, Smart, Sprain, Wilson & Camp, Abilene, for appellee.

McCLOUD, Chief Justice.

This is a summary judgment case. Plaintiffs, Ben F. See and wife, Mary Vir-

covered, or by the exercise of reasonable diligence should have been discovered. Wise v. Anderson, 163 Tex. 608, 359 S.W. 2d 876 (1962). The rule is well established that knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud, is in law equivalent to knowledge of the fraud. Glenn v. Steele, 141 Tex. 565, 61 S.W.2d 810 (1933).

Plaintiffs alleged and stated in their controverting affidavits they did not learn that the representations about the existence and identity of the buyer of the Bacon Drive property were false until a Texas Real Estate Commission hearing in December of 1972. Ben F. See stated in his affidavit that at that time the Texas Real Estate Commission determined that the alleged misrepresentations had been made by Hindman to plaintiffs, and in fact no James R. Oliver offered to buy the Bacon Drive property nor deposited the $100 on the purchase price. See stated that after the hearing in December of 1972, defendant's real estate license was suspended.

In his controverting affidavit See states that they moved into the North LaSalle street house in August or September of 1964, although the legal instruments connected with the transaction were not signed until December 31, 1964. Plaintiffs were notified by Stamford Federal Savings & Loan Association, the holder of the note on the Bacon Drive house, that the October payment had not been made. See contacted defendant and Hindman who told him it would be paid. See received a second notice of nonpayment and he was again told by defendant the payments would be paid. On December 31, 1964, at defendant's office, plaintiffs executed a deed conveying the Bacon Drive house to "James R. Oliver and wife, Emma L. Oliver", who, as recited in the deed, agreed to assume the unpaid balance on the note payable to Stamford Federal Savings & Loan Association. The deed shows that it was acknowledged before John Hindman and filed for record on January 25, 1965. In January 1965, plaintiffs were notified that the October, November and December payments had not been made on the Bacon Drive house and that if payments were not made foreclosure proceedings would be instituted. See contacted defendant or Hindman and was told "Oliver" was responsible for the payments and not defendant. See was told the matter was between him and Oliver.

See started looking for Oliver. He checked the telephone listing and found no James R. Oliver. He went by the Bacon Drive house several times but found no one there. See checked with Hindman who gave him a description of Oliver and told See that Oliver told him he had been staying at the Tower Motel and was either working for Halliburton Oil Company or was going to work for such company. See checked with the Abilene Halliburton office and they knew no James R. Oliver. The Tower Motel could find no record of anyone by that name having registered there.

The controverting affidavit reflects that See became very concerned and discussed the matter at length in 1965 with representatives from the Texas Real Estate Commission and the Federal Housing Agency. Both agencies investigated the transaction and each concluded and informed See that in their opinion there was a "James R. Oliver" as represented by Hindman.

Plaintiffs moved from Abilene in 1966 and returned in 1971. On April 20, 1971, they were served with citation in a suit filed against them by Stamford Federal Savings & Loan Association seeking a deficiency judgment. See again contacted the Texas Real Estate Commission and Federal Housing Agency. The area FHA director wrote See that there was nothing they could do and stated: "Our dealings with Mr. Lee have been satisfactory and we have no cause to question his integrity."

See continued to write letters. He wrote the President of the United States. Finally, he received a letter from the Texas Real Estate Commission dated April 24, 1972, asking if he would be willing to appear as a witness. He promptly replied in the affirmative. The hearing was held on December 14, 1972, in Abilene. See states in his affidavit that the Commission found that the alleged misrepresentation had been made by Hindman, and on or about January 12, 1973, suspended Lee's real estate license.

The record reflects clearly that See suspected as early as 1965 there was no such person as "James R. Oliver" but he was unable to establish such fact. Hindman and Lee at all times assured See that Oliver did exist. When Lee's deposition was taken on May 24, 1974, he stated he still thought there was a Mr. Oliver.

Defendant argues that the evidence conclusively establishes that plaintiffs had knowledge of facts sufficient to excite inquiry which, if pursued, would have led to discovery of the alleged fraud more than two years prior to commencement of this action. We disagree.

■ There is no question but that plaintiffs had knowledge of facts sufficient to excite inquiry. The record demonstrates that plaintiffs made inquiry, and defendant has failed to conclusively establish that such inquiry was not diligent. The controlling issue to be determined is whether defendant has conclusively established that such inquiry, if pursued, would have led to a discovery of the alleged fraud more than two years before suit was filed. We hold that defendant has failed to conclusively establish that diligent inquiry would have led to the discovery that Oliver did not exist.

It is true that plaintiffs in 1965 knew the payments were not being made, and that the employees of Halliburton and the Tower Motel had no personal knowledge or record of James R. Oliver. Furthermore, it is true that See suspected as early as 1965 there might not be a James R. Oliver. It has been said that "mere suspicion of fraud is not sufficient to constitute a 'discovery' which would set the statute in motion." Atkins v. Dodds, 121 S.W.2d 1010 (Tex.Civ.App.—Amarillo 1938, writ dism. agr.).

Knowledge on the part of plaintiffs that the payments were not being made on the Bacon Drive property and that neither the employees of Halliburton nor the Tower Motel had any record of a man named Oliver, does not conclusively establish that plaintiffs should have discovered the alleged fraud. Polk Terrace, Inc. v. Harper, 386 S.W.2d 588 (Tex.Civ.App.—Tyler 1965, writ ref. n.r.e.). The instant case is unlike Stephenson v. O'Neal, 433 S.W.2d 804 (Tex.Civ.App.—Houston 1968, writ ref. n.r.e.), which involved an alleged fraudulent misrepresentation regarding the foundation of a house purchased by plaintiff. There plaintiff suspected the fraud but also had knowledge of facts which would have led to the discovery of the fraud. There is a significant difference between discovering a defective foundation and discovering that an alleged person is nonexistent.

The facts which plaintiffs had knowledge of were consistent with defendant's theory that Oliver did exist but dropped from sight after purchasing the Bacon Drive house.

In Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738 (1943), the court said:

"What will constitute reasonable diligence to discover fraud and when the fraud might have been discovered by the exercise of such diligence are necessarily questions which must be determined from all the facts and circumstances in evidence in each particular case. When, under the facts in evidence, reasonable minds might differ on such issues, the

findings of the jury thereon are binding on the appellate court."

The cases relied upon by defendant are distinguishable. They each involve factual situations vastly different from the case at bar. In each case the complaining party was aware of facts which, if pursued, would clearly reveal the alleged fraud. A plaintiff can easily discover that an oil well has not been drilled on his land as in Wise v. Anderson, 163 Tex. 608, 359 S. W.2d 876 (1962). It is quite another thing to discover that a person said to exist does in fact not exist.

■ Defendant also argues that See's statements in his affidavit regarding the action and conclusion of the Texas Real Estate Commission constitutes inadmissible hearsay testimony. We disagree. The testimony was admissible to show the knowledge See had regarding the alleged fraud and when he acquired such knowledge. Texarkana Motor Co. v. Brashears, 37 S. W.2d 773 (Tex.Civ.App.—Texarkana 1931, no writ); Texas Employers Ins. Ass'n. v. Little, 96 S.W.2d 677 (Tex.Civ.App.—Eastland 1936, writ dism.); McCormick & Ray, Evidence, 799.

See's controverting affidavit raised genuine material issues of fact. The judgment of the trial court is reversed and the cause remanded.

RALEIGH BROWN, Justice (dissenting).

I respectfully dissent. The record establishes as a matter of law that diligent inquiry by a reasonable prudent person would have led to the discovery of the alleged fraud more than two years before suit was filed. An unreasonable lack of diligence for nearly nine years is permitted by the majority. I would affirm the trial court.